IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:13-cv-00363

| | |
|---|---|
| PROSPERITY VILLAGE TOWNHOME ASSOCIATION, INC., INDIVIDUALLY, DOING BUSINESS AS, AND ALSO KNOWN AS PROSPERTY VILLAGE HOMEOWNERS' ASSOCIATION, INC. AND PROSPERITY VILLAGE HOMEOWNERS ASSOCIATION,<br><br>    Plaintiffs,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>    Defendant. | ORDER |

This matter is before the Court upon Defendant's Motion for Partial Summary Judgment (Doc. No. 14). This matter has been fully briefed and is ripe for disposition. For the reasons stated below, the Court grants the Defendant's motion.

**FACTUAL BACKGROUND**

This case arises out of an insurance coverage dispute over a claim by the Plaintiff for storm-related hail damage to roofs. Plaintiff is the homeowners association of a 30 building townhome property that sustained damage in a storm on May 11, 2011. Plaintiff filed a claim with Defendant State Farm Fire and Casualty Company ("State Farm") on October 12, 2011.

After the claim was filed, State Farm retained independent adjusting company E.A. Renfroe to inspect the community for storm-related damage. John Kurek, an independent adjuster with E.A. Renfroe, inspected the property. Mr. Kurek inspected the roofs of every

1

building and found some covered damage, but states that he also found some non-covered mechanical damage.

On November 9, 2011, Plaintiff's property manager contacted Mr. Kurek and asked that Mr. Kurek inspect the property with Duane Brewer from Allphase Exteriors, Inc. ("Allphase"). The property manager had previously hired Allphase to inspect the property for damage. On November 11, 2011, Mr. Kurek and Mr. Brewer inspected the property together. During the inspection, Plaintiff's then contractor, Mr. Brewer, agreed with Mr. Kurek's assessment regarding the scope of the storm-related damage. After the inspection, Mr. Kurek created an estimate for the storm-related damage and determined the covered damage totaled $73,720.03. Mr. Kurek called Plaintiff's property manager to review State Farm's findings and informed him Mr. Brewer agreed on the scope of storm-related damage.

State Farm reviewed Mr. Kurek's findings and estimate, and approved his request for payment. State Farm sent the estimate and payment to Plaintiff on November 12, 2011. State Farm did not have any further correspondence with Plaintiff or Plaintiff's representatives until May 10, 2012.

On May 10, 2012, State Farm received a packet from Public Adjuster Matt Latham which included an agreement to engage him as Plaintiff's public adjuster and an estimate from Roof 911 indicating the property needed repairs in the amount of $1,428,209.72. The packet also included a report from Shields Engineering Group indicating Mr. Shields had inspected five of the thirty buildings and determined all of the roofs needed complete replacement. Based on the packet, State Farm determined an additional inspection was necessary. On May 23, 2012, Claims Representative Adrienne Sanders spoke to Mr. Latham regarding the need for an additional inspection by State Farm. On June 5, 2012, State Farm hired engineering firm Applied Building

Sciences ("ABS") to inspect the property to determine if there was any additional storm-related damage that State Farm missed. That same day, Ms. Sanders sent Mr. Latham a letter informing him of State Farm's decision to hire ABS.

ABS inspected the community on June 21, 2012 – June 22, 2012. Five ABS team members conducted the inspection in order to efficiently cover the entire community. The team included: two licensed professional engineers, an engineer in training, a registered roof consultant, and an Architecture Intern. ABS inspected every roof, building, and building envelope to determine if there was any storm-related damage to the property. ABS determined the roofs were 10-13 years old and there were significant construction and installation problems with the roofing shingles which were not storm related. ABS also determined there were some hail strikes on the roofing shingles, but most of the damage was non-functional (aesthetic), which is not considered hail damage under industry standards. ABS also observed only cosmetic damage to the standing seam metal roofs, which does not affect its functionality. ABS ultimately determined there was minimal storm- related damage, the shingles were serviceable, and there were not enough damaged shingles to warrant complete roof replacement. ABS also determined the metal vents and standing seam metal roofs did not need replacement because the damage was only aesthetic. State Farm received ABS's report on July 12, 2012.

Ms. Sanders reviewed ABS's report and reconciled it with State Farm's estimate to ensure State Farm paid for all of the storm-related damage, and ultimately determined State Farm had actually overpaid the claim based on ABS's report. On August 6, 2012, Ms. Sanders informed Mr. Latham of ABS's findings and State Farm sent the report, which included thousands of photographs, to Mr. Latham on August 9, 2012.

On August 22, 2012, Mr. Latham e-mailed Ms. Sanders disputing ABS's findings and complaining the shingles could not be repaired because the shingles were discontinued. On September 5, 2012, Ms. Sanders sent a letter in response to Mr. Latham's e-mail explaining State Farm's position on the roofs and the discontinued shingles. On November 26, 2012, Mr. Latham sent State Farm an architect's report by Ronald Goodstein. State Farm reviewed Mr. Goodstein's report and sent Mr. Latham a letter indicating State Farm did not see anything in the report that would support a change in State Farm's original decision. State Farm continued to disagree with Plaintiff's estimated cost to replace the metal seam roofing and Plaintiff's contention the roofs needed complete replacement. Plaintiffs filed this lawsuit on May 17, 2013.

**DISCUSSION**

Plaintiff has sued Defendant for breach of contract, bad faith, breach of fiduciary duty, and unfair and deceptive trade practices ("UDTP"). After Defendant filed the present Motion for Partial Summary Judgment seeking to dismiss all three of Plaintiff's extra-contractual claims, Plaintiff agreed to drop its claims for breach of fiduciary duty and bad faith. Accordingly, the only issue before the Court is whether summary judgment should be granted as to Plaintiff's claim for UDTP.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making this determination, the court must view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Unsupported speculation, however, is insufficient to defeat a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A motion for summary judgment must be granted if, after adequate time for discovery and upon motion, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient."). In response to a motion for summary judgment, "[t]he opposing party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Mere disagreement with the movant's asserted facts is inadequate if not supported by the record." *Blis Day Spa, LLC v. Hartford Ins. Group*, 427 F. Supp. 2d 621, 628 (W.D.N.C. 2006).

"To establish a claim under the Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1(a), a complainant must show: 1) an unfair or deceptive act or trade practice, 2) in or affecting commerce 3) which proximately caused injury to plaintiffs." *Id.* at 634. An act is unfair and deceptive "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* (citing *Marshall v. Miller*, 302 N.C. 539, 548 (1981)). North Carolina courts have held that an insurance company violates the UDTPA by engaging in unfair settlement practices outlined in N.C. Gen. Stat. § 58-63-15(11). *Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 71, (2000). These unfair settlement practices include:

> a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

5

> b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
> c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
> d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;
> e. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;
> f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
> g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;
> h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;
> i. Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured;
> j. Making claims payments to insureds or beneficiaries not accompanied by [a] statement setting forth the coverage under which the payments are being made;
> k. Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;
> l. Delaying the investigation or payment of claims by requiring an insured claimant, or the physician, of [or] either, to submit a preliminary claim report and then requiring the subsequent submission of formal proof-of-loss forms, both of which submissions contain substantially the same information;
> m. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and
> n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

N.C. Gen. Stat. § 58-63-15(11)(a)-(n). The determination of whether an act or practice is an unfair or deceptive practice is a question of law for the court. *Blis*, 427 F. Supp. 2d at 634; *see Ellis v. Northern Star Co.*, 326 N.C. 219 (1990).

Plaintiff has premised its UDTP claim on an alleged violation of the Unfair Claim Settlement Practices Act by formulaically reciting every act listed in N.C. Gen. Stat. 58-63-15(11)(a)- (n); however, Plaintiff has failed to present any evidence in support of its allegations. First, several of the listed acts are not even arguably related to the facts herein. Plaintiff has

6

failed to set forth any evidence to show any of the listed acts in § 58-63-15(11)(a)(i)(j)(k) and (l) are relevant to its claim. Further, when Plaintiff was specifically asked about any evidence it has to support any of these alleged acts, Mr. Jacobelli, the HOA President, indicated he did not have personal knowledge regarding these allegations and he was relying on statements from Plaintiff's public adjuster regarding State Farm's actions. Plaintiff's public adjuster, Mr. Latham, who handled the insurance claim for Plaintiff, did not offer any evidence in support of these allegations, and he admitted his only criticism of State Farm relates to its assessment of the scope of the damage. Accordingly, because no evidence has been presented in support of any of these allegations, none of these alleged violations of N.C. Gen. Stat. § 58-63-15(11) can support Plaintiff's claim that State Farm committed unfair and deceptive trade practices.

With regard to § 58-63-15(11)(b)(e) and (n), State Farm has set forth evidence that it conducted a thorough and timely investigation of the claim and promptly informed Plaintiff's representatives that State Farm did not agree with Plaintiff's assessment of the scope of damage. The undisputed facts show State Farm promptly investigated the claim, paid what it determined was the coverage damage within a reasonable time, and promptly responded to all communications with respect to the claim. Mr. Jacobelli contends in his deposition that State Farm took too long to respond to Plaintiff during the claim handling, but he admits he has no personal knowledge of the timeliness of State Farm's responses and is relying on statements from Mr. Latham. When Mr. Latham was questioned about State Farm's timeliness in handling the claim, he did not have any criticisms related to the timeliness of the claim handling, and he indicated he did not have any criticism other than his disagreement with State Farm over the scope of damage. Mr. Latham also admitted he did not have any criticisms regarding the time it took for State Farm to inspect the property. Based on Mr. Latham's testimony regarding State

Farm's handling of the claim, and Plaintiff's failure to produce any evidence showing State Farm's handling of the claim was not timely, the undisputed facts show State Farm did not delay the investigation, fail to deny the claim within a reasonable time, fail to promptly respond to communications regarding the claim, or fail to promptly provide a reasonable explanation for the denial of part of the claim.

With regard to N.C. Gen. Stat. § 58-63-15(11)(c)(d)(f) and (m), State Farm has produced evidence that it implemented reasonable standards for its investigation and attempted to settle the claim in good faith based on multiple inspections. The undisputed facts show State Farm diligently conducted multiple thorough inspections of the property, reviewed Plaintiff's conflicting estimates, quickly relayed its findings to Plaintiff, and promptly paid Plaintiff for the undisputed portions of the claim. Mr. Jacobelli testified he did not feel State Farm did a thorough inspection of the property, but admitted he was not there for the inspections and he did not have any evidence to support his contention. Plaintiff has failed to articulate any specific failures in State Farm's inspection and investigations that could support this claim. Further, the evidence actually shows Mr. Kurek and ABS thoroughly inspected every building on the property. Mr. Kurek and ABS representatives both testified they inspected all 30 buildings, sheds, and the pool house, which included inspecting the roof of every building. The inspection also included walking around every building and climbing on every roof to ensure accurate findings. Plaintiffs own experts only inspected one-fifth of the buildings and they did not even inspect the roof of every building before making their opinions regarding the damage. Finally, after State Farm conducted multiple inspections, State Farm made a good faith payment to Plaintiff for the undisputed portion of the claim.

Plaintiff, in its response in opposition to Defendant's motion, complains generally about the "practices and methodology utilized by Defendant," describing its methods as "unscrupulous." (Doc. No. 19-8.) In support of its argument, Plaintiff submits the affidavit of Mr. Latham, Plaintiff's adjuster, in which Mr. Latham essentially indicates his disagreement with the methodology of Defendant's consultant and his resulting recommendation, which Latham opines was "unsupported and reckless." (Doc. No.19-1.) However, in Mr. Latham's deposition, he was questioned at length regarding any issues he experienced with State Farm's handling of the claim. Mr. Latham repeatedly admitted that other than the disagreement over the scope of the damages, he did not have any criticism of how the claim was handled. Mr. Latham even agreed with Defense counsel's statement that, in a nutshell, Plaintiffs' disagreement with State Farm is over the scope of the damages. During the course of Mr. Latham's deposition he had ample opportunities to voice any concerns with the adjusters' handling of the claim, but he declined.

A party cannot be allowed to create an issue of material fact "simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Mr. Latham's sworn deposition testimony clearly shows Plaintiff's only issue with State Farm stems from the disagreement regarding the scope of damages, not State Farm's handling of the claim. The disagreement over the scope of damages is at the heart of the breach of contract claim, but it is not sufficient to support an unfair and deceptive trade practices claim.

With regard to N.C. Gen. Stat. § 58-63- 15(11)(g) and (h), State Farm has submitted evidence that it reasonably based its payment of the insurance claim on multiple inspections and

9

Plaintiff has failed to present any evidence showing State Farm ever believed the disputed portion of the claim was valid, but disputed it for the purpose of forcing Plaintiff to settle for less than what was owed. There is clearly a factual dispute regarding the scope of the storm-related damage, but that is not sufficient to survive summary judgment on an UDTP claim. There is a difference between State Farm's payment and the damages Plaintiff is requesting, but State Farm's payment was reasonable because it is based on multiple independent inspections. The payment was based not only on an independent adjustor's findings and an engineering firm's findings, but also one of Plaintiff's own contractor's findings. Mr. Kurek testified that Plaintiff's contractor from Allphase agreed with his findings regarding the storm-related damage. As several inspectors and engineers agree with State Farm's findings and payment, there can be no argument that State Farm has not attempted to settle the claim for far less than a reasonable man would believe Plaintiff is entitled.

Finally, there is no evidence showing State Farm believed the claim was valid, but disputed its validity to force Plaintiff to settle for less. The undisputed evidence from Plaintiff's own public adjuster actually shows State Farm never agreed with Plaintiff's position regarding the storm-related damage. State Farm paid the undisputed portions of the claim and Plaintiff has failed to present any evidence showing State Farm believed the claim was valid.

Plaintiff has failed to present any evidence showing State Farm engaged in unfair claim settlement practices and Plaintiff's own representative admits he has no complaints regarding how State Farm handled the claim process. Accordingly, the Court finds as a matter of law that State Farm has not engaged in unfair and deceptive trade practices. Accordingly,

IT IS THEREFORE ORDERED THAT Defendant's Motion for Partial Summary Judgment is hereby GRANTED.

Signed: August 29,

Graham C. Mullen
United States District Judge